IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JOANNA BERG, | ) | |
| | ) | |
| Plaintiff, | ) | CV-04-802-ST |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Pursuant to 42 USC §§ 405(g) and 1383(c)(3), plaintiff, Joanna Berg ("Berg"), seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons that follow, the Commissioner's decision should be reversed and remanded for an immediate award of benefits.

## BACKGROUND

Berg applied for DIB on July 27, 2001, claiming to be disabled since August 23, 2000, by pain associated with fibromyalgia. Tr. 74-76, 83.[1] Her last insured date is December 31, 2005. Tr. 79-80.

After denials of her claim both initially and on reconsideration, Berg requested a hearing before an Administrative Law Judge ("ALJ") which was held on December 11, 2002, and after a psychological evaluation, reconvened on October 2, 2003. Tr. 23-24, 36-40, 287-344. On January 15, 2004, the ALJ issued a decision finding Berg not disabled. Tr. 9-21. She timely requested review from the Appeals Council, which was denied on April 13, 2004. Tr. 4-8. Thus, the ALJ's decision is the final decision of the Commissioner.

Berg was born July 19, 1955, was 43 years old on the date of the administrative hearing, and has an eighth grade education. Tr. 74, 89. Her past relevant work experience was selling pull tabs in a bingo hall from 1984 to 2000. Tr. 96, 293.

## ALJ'S DECISION

The Commissioner has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR §404.1520; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999). The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A).

---

[1] Citations are to the page number of the transcript of the record filed with the Commissioner's answer.

At step one, the ALJ determines whether the claimant engaged in substantial gainful activity. 20 CFR § 404.1520(b). The ALJ found that Berg had not engaged in substantial gainful activity since her alleged disability onset date. Tr. 20.

At step two, the ALJ determines whether the claimant has a severe impairment that significantly limits her physical or mental ability to do basic work activities; if the claimant does not, she is not disabled. 20 CFR § 404.1520(c). The ALJ found that Berg had the severe impairment of fibromyalgia. Tr. 20.

At step three, the ALJ compares the claimant's impairments to the requirements in the Listing of Impairments at 20 CFR pt 404, subpt P, app 1. If any impairment meets or equals a listed impairment, the claimant is disabled. 20 CFR §§ 404.1520(a)(4)(iii), 404.1520(d). The ALJ found that Berg's impairment did not meet or equal the requirements of a listed impairment. Tr. 20.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1520(e), 404.1545; Social Security Ruling ("SSR") 96-8p, *available at* 1983 WL 31251. The ALJ determined that Berg retained the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; to sit six hours in an eight hour day and stand or walk two hours in an eight hours day; and to stoop, crouch, crawl and kneel occasionally, but was limited at reaching in all directions and could not climb. Tr. 20.

At step four the Commissioner will find the claimant not disabled if she retains the RFC to perform work she has done in the past. 20 CFR § 404.1520(e). Here, the ALJ found that Berg was no longer able to perform her past relevant work. Tr. 20.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. 20 CFR § 404.1520(f). The burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Tackett*, 180 F3d at 1099. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566. Relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that Berg was not able to perform the full range of sedentary or light work, but retained the ability to work as a booth cashier, a surveillance systems monitor, and a small products assembler. Tr. 20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If substantial evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute

At step four the Commissioner will find the claimant not disabled if she retains the RFC to perform work she has done in the past. 20 CFR § 404.1520(e). Here, the ALJ found that Berg was no longer able to perform her past relevant work. Tr. 20.

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. 20 CFR § 404.1520(f). The burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Tackett*, 180 F3d at 1099. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566. Relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that Berg was not able to perform the full range of sedentary or light work, but retained the ability to work as a booth cashier, a surveillance systems monitor, and a small products assembler. Tr. 20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If substantial evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute

its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

The ALJ concluded that Berg's chronic pain is not disabling. Berg contends that in reaching this conclusion, the ALJ erroneously rejected both the opinion of her treating physician, Dr. Kadavil R. Satyanarayan, and Berg's own testimony, causing the ALJ to err in assessing her RFC and ability to work.

### I.     Dr. Satyanarayan

Dr. Satyanarayan, who has treated Berg since July 1999, diagnosed Berg as suffering from fibromyalgia, osteoarthritis, generalized chronic lumbar strain, chronic sacroiliac strain, and chronic nonmalignant pain syndrome. Tr. 184  He stated that Berg has been "very compliant" with his attempts to keep her on modified and light duty work, but "even in a very sedentary (sit-down) type of job, she was not able to function effectively, because of chronic pain." *Id*. Although the ALJ found that Berg has the severe impairment of fibromyalgia, he concluded that "Dr. Satyanarayan's assessment is not supported by the evidence and is not persuasive." Tr. 16.

Where a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence in the record, the ALJ must afford that opinion controlling weight. 20 CFR § 404.1527(d)(2). Where the treating physician's opinion is contradicted by other evidence, the ALJ may properly reject the opinion by setting forth "specific, legitimate reasons;" where a treating source physician's opinion is uncontradicted, the ALJ may only reject it based on "clear and convincing" reasons.

5 - FINDINGS AND RECOMMENDATION

*Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989); *Lester v. Chater*, 81 F3d 821, 830, (9th Cir 1996). Dr. Satyanarayan's opinion was contradicted by Dr. Tatsuro Ogisu, an examining physician. Therefore, the ALJ was required to set forth "specific and legitimate" reasons for rejecting the opinion of Dr. Satyanarayan.

First, the ALJ rejected Dr. Satyanarayan's opinion because "the clinical MRI and CT scan studies . . . have not revealed objective findings" that would support Berg's "alleged pain from osteoarthritis and lumbrosacral strains." Tr. 16. This reason falls short of the "specific and legitimate" standard because these studies did in fact reveal evidence of mild degenerative arthritis at L2-3 and disc bulging at L4-5 and L5-S1. Tr. 178, 214.

More importantly, this reason fails to appreciate that Dr. Satyanarayan identified fibromyalgia as the primary source of Berg's pain. Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. *See Jordan v. Northrop Grumman Corp.,* 370 F3d 869, 872 (9th Cir 2004)*; Lang v. Long-Term Disability Plan Sponsor Applied Remote Tech, Inc.*, 125 F3d 794, 796 (9th Cir 1997). Common symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness and sleep disturbance. *Id*. Fibromyalgia's cause is unknown; there is no cure; and it is not well-understood by the medical community. *Id*. There are no laboratory tests for the presence or severity of fibromyalgia. *Id*. Thus, a diagnosis of fibromyalgia alone supports Dr. Satyanarayan's opinion as to cause and degree of pain suffered by Berg.

Second, the ALJ stated that mental status examination by Dr. Michael J. Campbell did not show any cognitive impairments. Tr. 17. While this may be true, this determination does not

undermine Dr. Satyanarayan's opinion as it relates to fibromyalgia because cognitive impairments are not symptomatic of fibromyalgia.

Next, and more troubling, the ALJ expressed disbelief in the scientific legitimacy of Berg's diagnosis of fibromyalgia, stating that: "At the hearing, the medical expert indicated that the diagnosis of 'non-malignant pain syndrome was a theoretical construct and suggested that the existance of such impairment was questionable." Tr. 17. The ALJ mischaracterizes the testimony from the medical expert, Dr. Frank McBarron. In reviewing that testimony, it is obvious that the Dr. McBarron firmly supported the diagnosis of a fibromyalgia or non-malignant pain disorder, despite the difficulties associated with these somewhat amorphous disorders. In fact, he stated that Berg's diagnosis by Dr. Satyanarayan was "the best description of a non-malignant chronic pain syndrome that I've ever read," and noted that Berg tested positive for 16 of 16 fibromyalgia trigger points.[2] Tr. 312.

The transcript of the colloquy with Berg's counsel at the hearing reveals that the ALJ did not believe fibromyalgia to be a disabling disease without some other objective underlying cause of pain or a mental issue. Tr. 290-91, 308-09. Although Dr. Ronald E. Mertens, a neurologist, found "no evidence for a neurological substrate to [Berg's] pain complex," he concluded that his examination was "consistent with fibromyalgia" which does not require any objective findings. Tr. 214. The ALJ also was intent on isolating Berg's symptoms within the diagnosis of nonmalignant pain syndrome, rather than fibromyalgia. Tr. 313-14. However, Dr. McBarron

---

[2] Elsewhere the ALJ states that the positive findings for 16 of 16 fibromyalgia trigger points by Dr. Ronald E. Mertens is "questionable" because the American Rheumatology Society identifies 18 trigger points, rather than 16. Tr. 15. This reasoning is unavailing. The fact that two of 18 trigger points were not incorporated into Berg's diagnosis does not serve to discredit that diagnosis, especially where the results of the testing so strongly corroborate the presence of fibromyalgia. There is no evidence before the court that the American Rheumatology Society's preference for 18 points is so authoritative that a diagnosis based on 16 points is somehow suspect.

7 - FINDINGS AND RECOMMENDATION

rejected that approach, characterizing the difference as "semantic." Tr. 314. Thus, the reasoning proffered by the ALJ falls also short of the "specific and legitimate" standard.

Lastly, the ALJ stated that the rheumatology examination conducted by Dr. Ogisu conflicts with Dr. Satyanarayan's opinion. Tr. 16. Dr. Ogisu found Berg to be positive for 12 of 18 fibromyalgia trigger points and diagnosed fibromyalgia, but completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form indicating, in essence, that Berg could perform light work with a sit-stand option, could perform postural movements occasionally, and was limited to occasional reaching. Tr. 251-54.

As the ALJ noted, Berg testified that Dr. Ogisu's examination lasted only about 20 minutes; she could hardly stand during the examination; she was not required to lift anything; and she could not kneel due to her back pain. *Id*. Nevertheless, the ALJ gave "great weight" to Dr. Ogisu's comments because his "report is consistent with other medical reports and the claimant's performance at medical examinations in general." *Id*.

Given the brief and arguably deficient nature of Dr. Ogisu's examination of Berg, it is difficult to ascertain why the ALJ gave his opinion of exertional limitations greater weight than that of Dr. Satyanaran who had treated Berg regularly for several years. The record does contain another RFC consistent with Dr. Ogisu's RFC, but it was completed by reviewing, not examining physicians. Tr. 156-60 (Dr. Richard Alley, affirmed by Dr. Martin Kehrli). Also, contrary to the ALJ's finding, the reports by all examining physicians consistently note some difficulty with Berg's movement or need to change positions due to pain. Tr. 164, 211, 214, 257.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the court may credit the testimony of the physician as a matter of law. *Lester*, 81 F3d at 834. Because the reasons offered by the ALJ fall short of the "specific and legitimate" standard, the court credits Dr. Satyanarayan's opinion as to the cause and degree of Berg's pain.

## II. Berg's Testimony

Berg testified that due to her pain, she must lie down after brief activity and is unable to lift more than three pounds, sit, stand, or walk for more than a short period — limitations that, in the aggregate, preclude her from performing full-time work. Tr. 104-111, 296-302.

Berg's complaints are consistent with the diagnosis of fibromyalgia. Where a claimant has provided objective evidence of impairments that could cause some level of the symptom alleged and there is no affirmative evidence that she is malingering, the ALJ must provide clear and convincing reasons to reject that claimant's testimony. *Smolen v. Chater,* 80 F3d 1273, 1283 (9th Cir 1996). A general assertion that the plaintiff is not credible is insufficient, the ALJ must highlight specific evidence that demonstrates a lack of credibility. *Lester*, 81 F3d at 834.

The ALJ found Berg's statements about her physical limitations as "not entirely credible." Tr. 20. As one reason, the ALJ noted that Berg collected unemployment during the period for which she claims disability, and that, in seeking unemployment benefits, Berg was required to affirm that she was capable of working. Tr. 17. The ALJ found Berg's affirmation to be inconsistent with her claims of disabling pain, and concluded that this inconsistency undermines her credibility. *Id*. Yet, the applicable unemployment regulation, OAR 471-30-036, appears to allow for and anticipate applications like Berg's, stating that:

> an individual with a permanent or long-term 'physical or mental
> impairment' (as defined at 29 CFR § 1630.2(h)) which prevents
> the individual from working full time or during particular shifts
> shall not be deemed unable to work solely on that basis so long as
> the individual remains available for *some* work.

*Id* (emphasis added).

Berg's unemployment application does not serve to undermine her credibility. Berg has been straightforward in her contention that she sought part-time work, but was unable to sustain full-time work and was advised by her doctor not to pursue full-time work. Tr. 184, 298. The Social Security regulations define a person who cannot sustain an eight-hour day as disabled. *See* SSR 96-8, *available at* 1996 WL 374184 ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day . . ."). Thus, even though Berg may have desired to work part-time, she may still be disabled.

The ALJ also rejected Berg's testimony because "the record shows that her medications are successful in resolving her symptoms." Tr. 18. While this may be true with regard to Berg's depressive symptoms, this conclusion is contrary to Berg's reports of pain. The medical reports corroborate Berg's claims of pain and Berg's reliance on a combination of drugs, including Methadone and Vicodin. Berg testified that these medications help to some degree, but do not resolve her symptoms. Tr. 299. Having reviewed the record, this court finds no support for the conclusion that Berg's medications resolved her symptoms.

The ALJ offers no other reasons to discredit Berg, nor does he discredit the lay witness testimony which substantially supports Berg's description of her daily activities and limitations.

Because the reasons offered by the ALJ do not satisfy the "clear and convincing" standard, Berg's testimony must be credited as true. *Lester*, 81 F3d at 834.

///

///

### III. <u>Disability</u>

In finding Berg not credible, the ALJ rejected her testimony about her limitations, specifically that she needed to change positions frequently, lie down frequently, and avoid lifting more than two or three pounds. Tr. 303, 305-06. The ALJ did not include these limitations in his assessment of Berg's RFC and in the hypothetical question he presented to the VE. Testimony of a VE based on a deficient hypothetical "has no evidentiary value" and reliance on such testimony is error. *Embry v. Bowen*, 849 F2d 418, 423 (9th Cir 1988).

Based on the hypothetical question and despite the fact that he had previously concluded that Berg was unable to perform previous work as a "pull-tab seller," the ALJ found that Berg could perform work as a booth cashier, surveillance systems monitor, and assembler. Tr. 335. Because the ALJ erred in rejecting Dr. Satyanarayan's assessment and Berg's testimony, the ALJ's also erred by concluding that Berg is able to perform work in existing in the national economy.

Berg asks the court to reverse the ALJ's determination, find her disabled, and remand this case for an award of benefits. Remand for award of benefits is appropriate where: (1) the ALJ failed to give legally sufficient reasons for rejecting evidence; (2) no outstanding issues remain; (3) it is clear that the ALJ would be required to award benefits when the improperly rejected

evidence is credited. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000).

Having credited Berg's testimony in regard to her limitations, it is clear that Berg is disabled because her symptoms prohibit her from working a full eight-hour day. *See* SSR 96-8, *available at* 1996 WL 374184. Berg is therefore entitled to an award of disability benefits. *Benecke v. Barnhart*, 379 F3d 587 (9th Cir 2004) (finding award of benefits appropriate where the ALJ erred in discrediting testimony from claimant who suffered from fibromyalgia and claimed disabling levels of pain that prevented 8 hour work day); *but see Rollins v. Massanari*, 261 F3d 853 (9th Cir 2001) (finding of no disability resulting from fibromyalgia is appropriate where ALJ's conclusion that claimant was not credible is supported by substantial evidence).

## RECOMMENDATION

The Commissioner's decision should be reversed and a Judgment should be entered remanding this case for an immediate award of benefits.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due September 2, 2005. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

DATED this 12th day of August, 2005.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

13 - FINDINGS AND RECOMMENDATION